Court of Appeals. Good morning and welcome to our court. At the outset, Judge Hall and I wanted to welcome and introduce to you our visiting judge, Judge David E. Bell, who sits on the United States Court of Appeals for the Tenth Circuit. He has sat with great distinction on that court since his appointment in 1988 by President Reagan. He is truly a scholar and we have had the good fortune of him helping us with our cases for many years. And so we're delighted, Judge E. Bell, to welcome you back and to thank you for your help and your service with our court and our cases. Thank you. This is a really wonderful circuit and wonderful lawyers. In interesting cases, it's a privilege to be here. With that, we will go to the first case, which is Rosales-Diaz v. United States. Good morning and may it please the Court. The heart of this case is about whether the district court violated Mr. Rosales-Diaz's due process rights when he explicitly relied on the erroneous belief that his statutory maximum was 20 years' imprisonment when imposing his 10-year sentence. And the record shows that the district court did rely on this erroneous belief. When explaining why it imposed a 10-year sentence, the district court expressly referenced the 20-year maximum, saying on page 16 of the sentencing transcript that it seriously considered imposing the 20-year maximum, thus the district court's decision to impose a 10-year sentence was based in part on its belief that the maximum was 20. Not only is there the district court's statement, the government itself emphasized that this is an aggravated felon case, and for that reason, a stiff sentence should be imposed. Given this context, it's clear that the district court relied on material misinformation when imposing Mr. Rosales-Diaz's sentence. The government thus far has not disputed that the district court relied on material misinformation. Instead, it argues that any time a sentence is within the proper range, it is immune from constitutional challenge. But the Supreme Court already rejected this reasoning in Tucker, stating that even a sentence within the proper range may be unconstitutional if it is based on material misinformation. And this court implicitly held that in Chukwit. Rather than acknowledge this long-standing precedent, the government instead urges that the district court got it right based on this court's en banc. Let me ask you the question this way. I think you'd be right except for one problem, and I want you to help me with the problem. There's no question when you read that sentencing transcript that he said that he could have gotten 20, he had an aggravated felony, and he's given him only 10, and he can't really squawk about 10 years. And he makes a speech about how the defendant is a recidivist, and he lays out the long prior criminal history and the needs for the sentence flowing from this lengthy record. But then he enters an order when the matter comes up on the motion to vacate, and he says, even assuming all of that is right, even assuming arguendo, that 16b could not be relied on, the residual clause could not be relied on, he wasn't an aggravated felon. The fact is he still faced 10 years for a prior felony under the statute, and I'm not changing the sentence. So I guess what I'm really asking is, he recognized what you say he had mistakenly assumed on round two and still wouldn't change the sentence. So what are we going to do? Send it back to the district judge and say, tell us if you really meant it? Your Honor, respectfully — Maybe I'm missing something. I think what you're missing, Your Honor, is he can say, I'm not going to change the sentence. He said, you're within the proper range and there's not a violation, and he cites the two district court opinions in his order, which also seem to suggest that if you're within the proper range, there's not a constitutional violation. He never says, I would have given you this sentence no matter what. He doesn't say, that's not in the record. He says, I don't find a constitutional violation because you're within the proper range. And the government argues that that reasoning is right under this Court's decision in Spencer. But Spencer doesn't support that. The plain language of 2255A says there's three types of claims. You have constitutional claims, non-constitutional claims, and jurisdictional claims. Spencer dealt with a non-constitutional claim about the application of the advisory guidelines. This is a constitutional claim. How is it a constitutional claim when Spencer says you have to show it's in violation of the law? The sentence violates the law. There's nothing about this 10-year sentence in and of itself that violates the law. It's authorized by the law because he has two felonies and you can have a statutory max. So, as I understand the government's argument, he doesn't even have a cognizable 16B claim here because the sentence doesn't exceed the authorized statutory max. So help me with that. I would agree with the government if you're raising a claim under the laws, but we're raising a claim under the Constitution. It's a due process claim. They're saying he doesn't even have a constitutional claim. The constitutional claim here is that it violated due process to sentence him under a now void statute. So, the due process claim, the cognizability of this claim was recognized by the Supreme Court in Tucker. Okay. So, to make sure I'm clear, you're not raising a Davis 16B claim then? Well, it's all part and parcel. It flows from the 16B. That's what I'm trying to understand, what your claim is. Are you raising a Davis constitutional claim that 16B is unconstitutional, so therefore he was improperly sentenced? Our claim that we raised in our 2015. Can you answer that question? Yes, we're raising a DMIA claim. You are? Okay, not Davis. Excuse me. A DMIA claim. Okay. That is what we raised in our 2055 motion. So, you are raising a DMIA claim? Yes. Yes, Your Honor. We are raising a DMIA claim. Well, how do you have a DMIA claim? We'll get to a due process claim over here in a minute. How do you have a DMIA claim when his sentence doesn't exceed the statutory max? Help me with that. Well, DMIA is still a constitutional claim, Your Honor. It's a claim based on the vagueness component of the due process clause. So, even then — I understand that. But how do you have a constitutional claim? Well, I think you have to — it all flows from the DMIA claim, Your Honor. We raised a claim that there was unconstitutional reliance on 16B because it's void for vagueness. And from that flows, the district court's reliance on the consequences of relying on the residual clause. It relied on the residual clause, therefore, it believed mistakenly — But he does tell us, I accept all of that. I'm not sentencing under 16B. He faces 10 years. That's what he's getting. I'm just not changing it. That's not what he said, Your Honor. Well, I just want to read you what he says. He says, Because plaintiff was clearly convicted of two felony offenses after which he was deported and then reentered the United States without lawful permission because the court did not such that he's entitled to relief under 2255C Navarro and Benitez. That's the exact language that he uses. He might have been more specific. He might have been sharper in what he said. But isn't this almost a formalistic exercise, I guess is what I'm really asking you. I have little doubt, really no doubt, that if we said, go back and do it again, you'd get the same 10-year sentence. Respectfully, Your Honor, I have significant doubt that he would get the same sentence. The court said at his sentencing that it considered giving him 20 years and decided not to do that because it decided this was not something worthy of the statutory maximum. In addition to that, we shouldn't be speculating what would happen at a sentencing hearing where the judge relied on accurate information. We know the district court relied on inaccurate information. Because we have the same judge here, I'm not following that. He said what he would do. He said the sentence is fine. It's not above 10 years. He's aware the statutory maximum is 10 years. He's certainly aware he could reduce it if he wanted to. Your Honor, I don't know that he — He chose not to. He said the sentence is fine. I don't know that that's true, Your Honor. He didn't say, I would give him 10 years no matter what. He said, I don't think there's a violation here because he's within the proper statutory range. Nowhere in the records does he say, you know, I recognize I can go down here, but I'm not going to do it because I don't think you're worthy. He doesn't say that. That's not what his order says. He says you're within the proper statutory range, so I don't find a violation. But then that would get you back whether you even have a 16B claim to begin with or a due process claim to begin with. We raised in our 2255 motion a due process claim based on DMIA. And from that, the district court erroneously ruled, without any briefing from the parties, that there was no violation here. Help me with this. Do you have two separate claims, or you have one claim, constitutional claim, due process claim, based on DMIA? We have one constitutional due process claim based on DMIA. Thank you. The only reason I had raised the question of what he's likely to do, what I read the transcript with considerable interest, I'm talking about the sentencing transcript and the language the judges use, sort of, quote, this is at page 21 or page 9 of the transcript, the court, you're a one-man crime wave. You're a menace to the community. You're a burglar. You're a thief. You assault people. You resist law enforcement efforts to apprehend you. You cause accidents. You leave the scene of accidents. You're a menace to the community. I mean, that's how he, I mean, rather floridly characterizes your client. Certainly does more than suggest his mindset about the defendant based on the record. That's the only reason why I'm simply asking whether this isn't just sort of a formalistic exercise. No, Your Honor, you're right. He emphasized he had a serious criminal history, and yet, even with all that, he says, but I'm not going to impose the maximum. And there's reason to believe that if he knew the maximum was 10 years, he may not have imposed that. And we're not saying it's a guarantee. Let me ask you the question. Would it be a violation whether you're making the claim on the 16b de Mayo, the Constitution, however you characterize the argument, and basically, you've run them together, it seems to me, however you characterize the argument, if indeed it is clear as a bell that there's just no daylight here, you're not, it's just a total formalistic exercise and a waste of time looking at all of our cases. Do we have to send it back? I think the only... Do we have the discretion to say, given our case law, and you're familiar with it, this is just, you know, a waste of time. We know exactly what he did. He told us what he did. He recognized 16b couldn't be used to justify an aggravated charge. He's described the defendant in these terms, application is denied. We affirm. Would that be error? And if it would be, tell me why. So I see my time's expired. Yeah, please. I don't say we have to do that. And you're certainly right that at the time of the sentence, he labored under an important misapprehension about the law. So Your Honor, I guess the way I think about it is that if we were on direct appeal, for example, this would be a constitutional error, and the government would have the burden of proving harmlessness beyond a reasonable doubt. Obviously, we're on 2255 here, and the standard's a little different. That said, I don't think, I still think it's a question of harmlessness, and what we don't have here is anything in the record saying, well, I'm relying on this fact, but even if I didn't rely on it, I'd give the same sentence anyway. There's nothing there. What we have is a, and the question we need to ask ourselves under Tucker and Shukwit is- You agree, you agree that if he had said no more than I accept that I labored under a misapprehension about 16b, he's not an aggravated felon, I'm still giving him 10 years, application denied. You would have no leg to stand on, would you? Yes, Your Honor. Of course, that would be very different. That's not what happened. No, no, no. I understand that. But if he had said those words, you would agree that a remand here would not be required? You know, Your Honor, I struggle to even agree with that because there is precedent in this Court under Jasmine Brown v. United States that suggests when your statutory range and your guideline range and the entire package changes in a dramatic way, you might have a constitutional right to a resentencing hearing. I don't, I think it's a more difficult question, but I understand what Your Honor is getting at about harmlessness. And of course, this isn't that- So what's the standard that we're supposed to apply here? So under Tucker and Shukwit, the question is simply, is it possible the sentence may have been different? And it may have been. The district court considered the statute? If there is a sliver of possibility, we're required to send it back. If the district court relied on misinformation and there's reason to believe- And then recognized 16b, couldn't go under 16b, couldn't use the residual clause, and couldn't use, therefore, any theory of aggravated felony, and still said he gets 10 years. Same judge. It depends on the facts of the case, Your Honor. I mean, it's a one-count case and the guidelines dramatically changed and the statutory range dramatically changed. It's a different case. You don't dispute you have the burden on the 2255 to show the sentence violates the law? It is our burden on 2255. To show it violates the law, whether the law is a constitutional provision or a legal provision, you have the burden, correct? Yes, Your Honor. Okay. Thanks very much, and you've got your full rebuttal time. Thank you. Good morning. May it please the Court, Yvette Rhodes on behalf of the United States. As I sat there, I was a little confused about technically whether we're here on a 2255 claim or on a direct appeal claim, because counsel's beginning remarks sounded as if we are here on direct appeal, and we're not. Well, the question I have is the one that my colleagues have been asking about prejudice, but the prejudice I'm worried about hasn't been addressed yet, and that is, is there a prejudice because he currently is being sentenced under B-2, which is called an aggravated felony? And if he were sentenced even to the same amount under B-1, it would not be considered that. Is that, is that the stamp on his forehead of an extra aggravated felony for further sentencing that might happen down the road for this one-man crime wave? Is that a prejudice? Well, the what may or may not happen down the road is not the issue. No, it is the issue. There are plenty of cases I know around the country, I guess I don't know for sure in the 11th, but there are a number of cases around the country that say that if you, if you, if a defendant carries a moniker of an, of an additional category of, of sentence, that the possibility that that will enhance his sentence in the future or make him a career number of months doesn't change. And if he is sentenced under B-2, he is categorized as an aggravated felon, and that carries legal consequences for subsequent sentences. I want to know, that, that is the only concern I have. I agree with my colleagues that I think it is almost very likely that he would be sentenced to the same amount upon remand, although I must say I am, I am a little troubled that the Court might look at him differently for sentencing if the Court doesn't look at him as an aggravated felon on this case, but rather just as a plain felon, might make a difference. And I am, so I can see those two potential concerns. And I guess on the other side of the coin, in terms of appearance of justice, I, I am not persuaded that it is a very great cost to the government to get it right. Well, the, it seems as if what you are discussing is collateral consequences, which are not the, Section 2255 is, is not the office for correction of those types of collateral consequences. And we don't even need to get to the issue of prejudice in this case. But, I mean, it's, the, the, the way you get to 2255 is that there was a constitutional violation. Yes. You sentenced me under a statute that is unconstitutionally vague. That gives you your cause of action under 2255. And then you simply ask just the garden variety question, am I prejudiced, kind of question the Court's to deal with all the time. And he says, yeah, for two reasons. He says, one, there's maybe a difference in the way the Court would look at me if I'm convicted of an aggravated felony versus not. We don't know for sure. That question was not presented to the District Court. And in spite of his recitation of my wrongdoings, he did not say, and because you are a aggravated felon in this case, I'm going to do something. So we don't know what he would say about that. But then more seriously, there is this concern about the, the scarlet stamp that will prejudice me in the future. So I, I think it's a legitimate 2255 issue. Well, first of all, we have to get all the way back to. You do. You've got to get through all the other stuff, but I'm just addressing the issue that we spent so much time talking about with the appellant. We surely have a lot of other issues. And if you, if you've got a quick answer to this question, I'd like to hear it. If you don't, let's move on to the other issues. Well, my quick answer is, is what I said before, the collateral consequences with regard to the, the import of the aggravated felon classification, it's not, the remedy for that is not a 2255 motion. And do you have a 11-circuit case, because there surely could be one that I'm not familiar with. Do you have an 11-circuit case that says that? I can't think of one off the top of my head. Okay. Thank you. Now you proceed with your other argument. Okay. I'd like to go all the way back to where, where we need to start, which is what the burden in this case. And the burden in this case is, first of all, for the defendant to establish that the Court relied upon a now-defunct residual clause in Title 18, Section, United States Code, Section 16b in imposing its sentence. And the answer to that question is he hasn't met the burden. The sentence that was imposed in this case was a 10-year sentence. The undisputed facts in this case would support a 10-year sentence in this case, based upon his unlawful felony convictions, and he had numerous felony convictions. Therefore, the sentence that he is serving is lawful. And not only that, he hasn't shown that the only basis for the enhancement of the sentence But he labored under a misapprehension of law. That's correct. And it was a big misapprehension. He says in the sentencing transcript, In my considered opinion, I'm reading from page 16 of the transcript. In my considered opinion, I believe that a variance is more than an order, and I believe that a sentence of 10 years is more than reasonable in this case. And I intend to give him 10 years, and I intend to run a consecutive to the state sentence. And then he says these words. I just wanted to put the following in its context. I seriously considered giving him the statutory maximum of 20 years, because I know that once he's released, because he's still a young man, and once he's deported, he's coming back here. No question in my mind, in any mind, but I won't do that. For these reasons, it's the judgment of that he be committed to the custody of the Bureau of Prisons for a period of 10 years. He assumed he was an aggravated felon. He assumed that he faced 20 years. And with that mindset, and with the statement that he thought this guy clearly was a recidivist who had to be basically put in jail for an extended period of time, he said, I'm cutting your break. I'm giving you only 10. That's probably enough to satisfy our need. That was a mistake, and that was a big mistake. So we're really asking this question of prospects or probabilities that on round three, what would he have done? Round one being the sentence, round two being his disposition of the 2255, round three being if we sent it back, is there any reason, prospect, he wouldn't do what he has already done? How big a deal is the fact that he labored under a misapprehension of law is really what I'm asking? Because you have to concede what he said was absolutely wrong. What he said was, well, he believed that the defendant was subject to a 20-year sentence. That was under the Maya an inappropriate . . . It's not inappropriate. It was just wrong. It was wrong. It was wrong as a matter of law, wasn't it? It was a legal error. Yeah, it was a legal error. He thought he could have given him 20, thought he was a bad guy and a recidivist. He cut him a break. He gave him 10. But if, in fact, he only could give him the maximum of 10, do we know with sufficient confidence that on a rerun, he would give him 10? See, I thought your answer to me would be, we know that as clear as a bell. All you have to do is read what he said and read what he did on round two when he denied the $2,255,000. I don't think it matters in that . . . Explain that to me. If I were troubled here that this judge is not likely to give him 10 years if he knew he was laboring under a misapprehension, wouldn't I send it back? Wouldn't I have to send it back? You don't have to send it back because the defendant, first of all, hasn't met his burden of showing that there was a due process violation in this case because it's his burden to show that the court relied upon a now-defunct residual clause in 16B, and he hasn't met that burden. He has to show that that was the sole basis upon which the court imposed the sentence. And the basis upon which the court could have imposed the sentence that the court actually did impose was the undisputed fact that the defendant had felony convictions which supported an enhancement to the 10-year maximum under 1326B1. You know, it's not just the amount of the sentence. That's not the end of the query here. The rationale has to be constitutional, too. If the court had said to this guy, you know, under the appropriate sentencings, I'm not even going to worry about what the appropriate sentencing is because I think that you haven't paid taxes like you should in America, and I can see that the tax laws would allow me to sentence you to 10 years. So based on that rationale, even though you weren't charged with that, I'm sentencing you to 10 years. It's not, the government wouldn't be up here and say, well, that's fine, he could get 10 years under the proper immigration laws. We would say, it's not just the total amount of sentence, it's the rationale that has to be constitutional. You can't just sentence somebody for something, because I don't like you, for 10 years and just luckily, even if I did like you, you could have gotten 10 years. That's not enough. Well, my answer to that is twofold. My answer, first of all, is that why we're here is to determine whether, first, my answer to that, first of all, is that that's a tenable argument if we were here on direct appeal, but we're not. We're here in a 2255 proceeding, the defendant has the burden to show, first and foremost, that there was a reliance, that that was all the court relied upon was the residual clause in 1320, I'm sorry, in Title VIII, United States Post 168. Didn't the court say, I'm relying on B2? That's where the sentence was imposed on that. There's to me no doubt that that's, when you look at the sentence, that he was relying on B2. That wasn't even what the question was at the sentencing hearing. The question at the sentencing hearing was whether the defendant, we were talking about a guidelines calculation, and the question at sentencing was whether or not this defendant's burglary conviction was a burglary of a dwelling such that he was entitled, well, not entitled to, but he qualified for a 16-level enhancement of his sentence. That was the issue at sentencing. We weren't talking about — What did the sentence say? I'm sorry. I don't have the sentence in front of me here, but what does the sentence say when the court entered the sentence? Did it say under B1 or B2? The court didn't say anything about the provision it was relying upon, but as I indicated, the question at sentencing was a guidelines calculation. The defendant said, and actually, the lawyer indicated to the court that he even wanted to withdraw that objection, and the defendant hedged on it, so the court said, I'm going to, I'm not going to accept the withdrawal, I'm going to resolve the question. And the question at sentencing was whether or not the defendant qualified for a 16-level enhancement of his sentence under 2L1.1B1. That was the question at sentencing. But actually — The rest of what was stated at sentencing was the court giving the rationale for varying above the guidelines range. There was no discussion at sentencing about whether or not this was a B1 or B2. There was.  No, Your Honor. We do know that because the court said you could have gotten 20 years, and I'm going to give you 10. That proves that the court had B2 in mind because he wouldn't have said that if he was thinking under B1. He wouldn't have had 20 years under B1. And we also know that oral statements of sentencing trump any written statements. So we have the kind of the gold standard here that the court was, in fact, relying on B2. By his mere statement that you could have gotten 20 years, that proved he had to be under B2. All of that, to me, sounds as if that was a great argument that the defendant could have made if we were here on direct appeal. And we're not here on direct appeal. Oh, but on direct appeal, this defendant didn't have — And we're here on the 2255. Counselor, counselor. On direct appeal, the defendant did not have DeMayo or Johnson. And that gets to whether or not — And that's why we allow habeas actions when there's a substantial change of law. That gets to whether or not there's cause and prejudice here, and the defendant hasn't established that for the reasons that we state in our brief. Let me ask you a question. The judgment and commitment order, the written order itself, does it indicate B1 or B2? I believe it says B2. I don't have it in front of me, but I believe it says B2. Are you talking about the original order or the 2255? No, no. I'm asking about the original order. We know what he — we have the — read from what he said on the 2255. I'm asking about the original order. I believe it says B2. That he was sentencing under B2. Yes, Your Honor. I'm looking at the 2255. He quotes B1 and says, I might grant relief because, pursuant to B1, if an individual reenters the United States after being removed for non-conviction other than aggravated felony, he's still subject to ten years. And then he goes on, because the court did not sentence him in excess of ten years, his sentence was not increased under 16B such that he's entitled to collateral relief. So in terms of the documents that go with his case, the district court in the 2255 order made clear he's not an aggravated felon, he recognizes that, but he says he's still a B1 person. That's correct. So that's really what you should focus on, that the court made it clear that it was a B1 sentence. Now, that goes to — it may be problematic if we didn't have the same judge who was the trial judge. If he didn't do a written order, sometimes we see cursory orders. This one's a fairly decent Trinity 55 order. It explains what he's doing. Yes, correct. And if I could have, like, 30 more seconds. Sure. Yes. With regard to the misinformation issue that has been injected into this case, we say, number one, that that's untimely. It wasn't the basis upon which they sought 2255 relief, and that is a substantive due process claim that's not timely, even if we accept that the COA expands to DMIA. In addition to which, the type of misinformation that the court has recognized could constitute a due process violation is not what happened here. We're talking about a mistake of the law. The misinformation in Tucker in those cases was of constitutional import because the court relied upon predicate offenses or aggravating offenses that were based upon unconstitutional claims in the first instance. For example, the court aggravated a sentence based upon a vacated conviction or an uncounseled conviction. We don't have that here. What we have here is a mistake of the law, and therefore, the misinformation is inaccurate, and we assert that you can affirm on that basis as well. Thanks very much. Thank you. Mr. Kahn, you've reserved four minutes. Thank you, Your Honor. I'd just like to address a few matters in my brief time at the podium. First, to Judge Bell's point, being an aggravated felon is a scarlet letter, and it does have collateral consequences, including the ability to apply for readmission. And I do believe the standard here under Tucker and Shukwit is whether the sentence might have been different, and it might have for the reasons I previously discussed. And to Judge Marcus' concern, we don't know that the court would give 10 years if there was remand. Let me ask you the question this way. When you cut to the chase, if indeed we were to disagree with you about that, that we're really confident that the exercise is utterly formalistic, and that on round three, you'd get the same 10 years. Let's just assume that that's so. You would have to lose here, wouldn't you, on a 2255? Because you couldn't show, you couldn't meet your burden, could you? If the district court relied on material misinformation, and it might have imposed a different sentence, we meet our burden. So the question is, is it possible the district court may have imposed? If we were satisfied, the district court told us what he was going to do because we had this order on the 2255. You may disagree about its language, but let's just assume we were to read that together with the transcript of the sentence and say, there's no realistic chance anything would have been different. If you accept that, then you would have to lose, you wouldn't have met your burden, and there would be no reason for sending it back. Isn't that right? If the court concluded that there was no chance of being a different sentence, we cannot show that the sentence may have been different. Right. You've got to show some reasoned prospect that the sentence would be different, don't you? It may have been different. Right. And here it may have been different, but the district court did not want to impose the maximum. It said, I thought about it, but I don't want to do it. It may have been different. And at a resentencing hearing, you'd have a far lower guideline range. You'd have maybe pepper evidence, and the district court would not be laboring under the misapprehension of a much higher maximum or the scarlet letter of being an aggravated felon. I just want to— Let me talk about when you say he won't be eligible for readmission. The scarlet letter of aggravated felony, as I'm looking at the PSI, he was deported in 2006 because of a whole bunch of crimes, correct? Is that correct? That is correct, yes, Your Honor. And this case is because after being deported, he came back in, and he's being convicted of being an illegal reentry after deportation. After being deportation after an aggravated felony. No, the first time he wasn't deported after an aggravated felony. Oh, I'm sorry. I misunderstood. Yes, Your Honor. No. First time he wasn't deported, he had a bunch of crimes, and he was just deported. Aggravated felony had nothing to do with it. It was a deportation. So then he's now back here on an illegal reentry conviction, correct? I'd have to go back and look at the record, Your Honor. Yes. Well, you know, you wouldn't have had him plead to illegal reentry if he hadn't already been deported one time, right? Yes, Your Honor. Okay. So he's already been deported. He's back here again, illegal reentry. So he's not going to be eligible for admission. I think that's a red herring. You're saying, well, he's got a collateral consequence. He won't now be able to apply for readmission. He's not going to be able to be legally readmitted. But I'd let you know something I don't know. I see my time's expiring, Your Honor. I have one more question. As I understand it, because I think it's important that this be clear, you're not challenging the 16-level enhancement under the guideline calculations because the Court has said, and also the Supreme Court has said, that the vagueness in the Johnson and so forth doesn't apply to the guidelines calculations. So this has no challenge to the guideline calculations, correct? That's correct, Your Honor. Okay. Thank you. And I would just like to briefly conclude by just— What we're left with is the statutory max issue, really. Correct. Although I know you disagree with that, but that's— And if I could just briefly conclude, Your Honor. I see I'm over. Sure. Go ahead. I don't— Please. So, Judge Hull, your questions just lead me to two other points I was hoping to quickly make. One is that really the best case we have here is the Supreme Court's decision in Tucker, which makes it clear that even a sentence within the proper statutory range can be unconstitutional if it's based on material misinformation. Is that a 2255 case? It is, Your Honor. Okay. And here— You concede that you must show there's a reason, prospect, the sentence would be different if the judge was not laboring under this misapprehension of the law under the B-2 Clause. Yes, Your Honor. If that's so, would it matter one whit whether he is carrying this moniker of an aggravated felon or not? That wouldn't be reason enough, given our case law, to get it over, would it? I think it would be different if the district court said, I'd give you 10 years no matter whether this fact— So, all I'm saying is, if he had said— Let me put the question then again that way. If the district court said, okay, maybe it wasn't B-2, he's not an aggravated felon, he's a bad guy, here's why, and I'm not changing the sentence, 2255 denied. I think it would be very difficult to meet our burden. Notwithstanding the fact that it still would be true that he was carrying the scarlet letter of aggravated felon in the literal sense that if you looked at the judgment and commitment order, it says B-2. Under your hypothetical, I would agree with you, Your Honor. That wouldn't be enough. I don't think so, Your Honor. That prejudice would not take you home on a 2255. Not if the district court made clear this is the sentence he'd impose no matter what. So, if we were satisfied about that, you'd lose. If we have a real question about it, then you win. It's as simple as that. Yes. But the record here, Your Honor, is very—does not make it clear the court would give the sentence no matter what. It's not clear. Yes. I understand that. And so I would just briefly like to say two more things, which is, in addition to Tucker being our case that's really on point, is that merely changing the statute from B-2 to B-1 doesn't cure the fact that there was inaccurate information relied on in his sentencing. So this isn't just a question of changing a scrivener's error. This is inaccurate information that was relied on in his sentencing. And finally, Judge Hull was just discussing that at sentencing, the real dispute was about 2L1.2, not 16B. Those are very different. 2L1.2 has a enumerated crimes clause. 16B doesn't. They're there for the first time in their supplemental authority letters relying on Beaman, but it's clear that these offenses that were relied on for the aggravated felony enhancement only qualified under the residual clause at the time of sentencing. So even then, we meet that burden. So I would just ask the Court, for the reasons we've discussed here today, to please vacate the district court's order denying Mr. Rosales' DS-2255 motion. I remand this case's instructions to grant the motion and schedule a resentencing hearing. Thanks very much. Thank you. Both will proceed with the next case.